Good morning, Judge Nelson, Judge Brunetti, and Judge Silverman. My name is Steve Jackson, and I'm here to represent the plaintiff in this case. I think that the opinion written by Judge Silverman in Ovi v. Quinn perhaps covers a lot of the issues of civil rights and RICO issues in this case. In rereading Ovi yesterday again and over the weekend, I find an ambiguity in it, and depending upon which way that ambiguity goes, I think that the plaintiff in this case loses completely his claim based on the 1995 factual incident, or keeps it and loses his non-excessive force claims based on the 1997 incident, or keeps those claims. I don't know how it was intended to read the Ovi case with respect to whether or not the components of the text not being present, that is, the guilty plea, and whether or not there's a factual predicate for it to be read or intended to be read conjunctively or disjunctively. I take the position in reading it that if there's a guilty plea, heck, it doesn't apply because there's nothing to impeach. However, I can easily read Ovi the other way so that there's got to be a guilty plea and no factual predicate. From the look on Judge Brunetti's face, I think what I just said must have been unintelligible. No, no, no, no. My face is out of control at this point. I hear what you're saying. I have another problem. I was concentrating on how to fit that into my other problem in this case, and it seems so. I read Cunningham, our case 1902. Rehearing was denied on 203. Cunningham seems to imply that if you could have brought a habeas and you didn't, that maybe heck does apply. And in this case, what I was trying to determine is there was a sentence, then there was an extended period of parole or some sort of supervised release, and it appeared he might have been able to bring a habeas but did not. Am I correct? In other words, there's no habeas that was brought during those periods. You're completely correct. Cunningham was my case. Yeah, I know. And so how do we sort that all out? What if someone sits in jail, takes his term, takes the supervised release and says, I'm going to ride this out, gets out, and then he says, okay, now I'm going to get my retribution. I'm going to go for the 1983 action because I really have a problem here. How do we – what do we do with Cunningham or how do I – that's why I'm trying to tie this all together. I'm having a hard time with that. I don't think Cunningham says that if you ride it out. I agree with everything you just said except the retribution part, but I understand the concept. And I don't understand or read Cunningham to indicate that if you could have filed a habeas but didn't, you're out of the game. Well, we said in footnote three we declined to hold that Cunningham's failure to timely pursue habeas remedies takes his 1983 claim out of HECS purview. I'm not too sure how we should interpret that, but it caused me some concern. It's a footnote, and I'm not going to have any say in how this panel interprets that except to say I don't think it would make sense to interpret it that you're out of the game on the 1986 – on the 1983 claim, and I don't mean to be rhyming with that, because what HECS concerns itself with is the intersection or not of federal habeas corpus and section 1983. HECS is a peculiar rule of accrual, and I think that if your cause of action hasn't accrued, you can't file it. I don't think there's a requirement that anybody file a habeas. Certainly HECS doesn't say that. I mean, there's no law to support that. I mean, surely this panel is going to base its decision in this case on what the law is, and there is no case of which I know that stands for the proposition that someone who can file a habeas must file it, and if she or he doesn't file it, that therefore you can't bring a section 1983 action, because to do that you'd have to assume that somebody made that conscious decision. Now, maybe in a case where it could be proved that somebody made the conscious decision, I'm better off writing out this jail sentence that isn't that long, perhaps, and not filing a habeas, and then going after damages in section 1983, maybe there'd be a basis there, but maybe somebody doesn't know they can file a habeas. Well, I don't know that knowing is – I have a problem, a little bit of a problem with that, because if the underlying principles here are that if you were convicted of certain wrongful acts and that if you can have a habeas to challenge your conviction and you don't, but you can later come back and collaterally bring in 1983 and get damages if there's something wrong with that, if that's where we're starting, then we get into that situation where Souter wrote on, and I have a problem how to sort this all out, because I can readily see where someone doesn't know, doesn't file a habeas. I can readily see where someone knows and doesn't file a habeas, and still end up in the same situation with a 1983 with no prior habeas. I think in our system it's a good idea to attach liability or not or take away people's rights or not based on what they knew and not to interpret situations in a way that would call for strict liability. If you have some poor slug in jail who maybe doesn't know he can file a habeas or doesn't have a lawyer to do it, that person shouldn't be punished by having a section 1983. Well, he's not entitled, number one, to have a lawyer to do it. He's not entitled to a lawyer for habeas, and I understand what you say, knew, but I don't know that I find case law that I've read that turns on what he knew or should have known. I don't think there's case law either way on this point. I think this panel is going to end up deciding this issue. Don't we throw out habeas petitions all the time on the grounds that the statute of limitations has expired? Don't we throw out habeas petitions all the time as being untimely, and we don't inquire whether or not the petitioner knew that he could have filed one or should have filed one when he did? I take it from your question that that happens, but I'm at a loss because I don't do habeas law. I've done one in my life, and I'm sorry, I just don't know the answer to that question, but I assume from the way it was phrased that such is the case. It's like with any statute of limitations. You're charged with knowledge of the statute whether you really know it or not. I assume that to be the case. I don't know that to be the case, but I accept it. Well, then if this guy could have filed a habeas, he's got one year to file it, and didn't, why isn't it like Cunningham? I think it is similar to Cunningham, but I don't think that this Court made that actual holding in Cunningham. This Court may make that actual holding in this case and not put it in the footnote, and if that's the way it goes, then so be it. That will be the law. I mean, I can't really argue against it the way it's presented here. I have no way to honestly do that. I don't think that should be the law, but, you know, what I think should and shouldn't be the law is quite irrelevant to what this Court is going to decide. Would you talk about the RICO part of this? That, to me, is the hardest part of the whole deal. The issue in RICO, I mean, this is a pleading case. This appeal is a pleading appeal, and I wonder if I could leave the RICO discussion for the next case, because I've only got two minutes left, and I'd like to reserve that time. May I do that? Sure. Janet Bogie again from the L.A. City Attorney's Office. On behalf of most of the city defendants, I would just like to indicate to the Court that there are some individual defendants represented by conflict counsel in this case, and I believe most of them are in the audience. But I will be speaking on behalf of the majority of the city defendants. You know, when we were exploring Cunningham, it seems to me that's a very key point here, because we're kind of pushed against our own law, and it brings in the Spencer-Keemner situation. As far as I remember, Spencer-Keemner, the habeas had been brought, but then he was released, and the habeas was pending after he'd been released, and it became moot. Am I correct on that one? That's correct. So if that's the case, we have places where an incarcerated person brings a habeas He's released, and the habeas becomes moot. We have cases such as this. If there's no indication in the record that a habeas has been filed or why it hadn't been filed, then we have Cunningham with the footnote. And so how do you take this on how we should interpret this law, especially as related to this case where no habeas was brought, even though the time was there and could have been brought? That's right. And just to set the record straight in terms of the facts, we did ask the district court to take judicial notice of the criminal proceedings in this case, and I have included the dockets from the criminal proceedings in my supplemental excerpts, and they clearly show that on both the 95 and the 97 cases, Mr. Guerrero was sentenced to three years in jail. So the custodial requirement was there for purposes of habeas. Mr. Yagnan's position seems to be we should look at why habeas was not brought. Is there some reason this poor man didn't realize he could bring habeas and so forth? That's not what HEC says. HEC says if you have a valid conviction, you've got to deal with that before you come and bring your 1983 lawsuit. It's not a matter of looking at why you didn't bring your habeas, I didn't have a lawyer, et cetera. That's not the relevant inquiry. So I think the situation is a HEC situation. Based on the record we presented, he had the opportunity. Cunningham is an interesting situation that I think is analogous here. In Cunningham, he could have brought a habeas, he let the deadline expire for doing so. He voluntarily didn't bring his habeas. It's the exact same situation we have here with Mr. Guerrero. He had the opportunity, he didn't bring it. Do we look at this as sort of an absolute test? That is, if you have a criminal conviction, which implies certain wrongful acts and certain consequences, and if you leave that slide, whether you knew, should have known, or whatever, relative to habeas relief, and if you then allow a 1983 later, as been discussed in the cases, you are going back directly and impugning that record, i.e., that you did those wrongful acts and that you incarcerated, but we're going to pay anyway. In other words, because if you do bring the case and it does work, then you're incarcerated, but then we're paying you for your wrongful acts but those wrongful acts still on the books never challenged. Is that the way we should be looking at this? Well, I mean, it does, it's not incredibly simplistic. It's not a matter of you have a valid conviction, now you're bringing a 1983 lawsuit that somehow may be related to the underlying facts of that criminal conviction. You have to invalidate that. Well, I'm assuming that the 1983 directly relates to those acts. They're not, we know about the things of the excessive force versus, I'm talking about direct challenge in the 1983 to the very acts that you were incarcerated for. Right. And I think the question is the second part. Well, I'm saying is what difference does it make in a HEC analysis if you don't bring the habeas and if it's still standing, if you allow the 1983 there seems to be something wrong because he could have brought the habeas. Right. There's nothing in the record that says you prevented and that sort of thing, and so now you get paid for sitting in jail for your wrongful acts not challenged and not turned over and now we pay you for it. Well, I think that's correct. I don't think you go back and evaluate why you didn't bring the habeas. It's a matter of, I mean, I think the Supreme Court's concern in HEC was we don't want to take one set of facts which led to the criminal conviction and have a different resolution in the criminal arena and in the civil arena. We don't want this inconsistency, which is why they analogize to the malicious prosecution situation. You have to have a favorable termination of your criminal proceedings before you can proceed. That's exactly what we're talking about, these conflicting resolutions in two different forms from the same set of facts, and that's what we have here. You know, we have two convictions that haven't been overturned, that haven't been touched. There was a factual basis found for the plea. Now Mr. Brewer is saying, oh, no, there was a problem. I mean, Judge Feese, the district court judge, characterized these largely as malicious prosecution allegations in the 1983 lawsuit. You cannot proceed with malicious prosecution until you have a favorable termination at the state court level of the criminal convictions, and that's exactly what Mr. Brewer is trying to do on these very old cases from 1995 to 1997. If we were to assume for the purpose of discussion that HEC did not bar this case, would the statute of limitations bar it? I believe that, yes, it would definitely do so. Because in that situation, if you give him the benefit of the argument and say HEC doesn't apply, then the statute would start running at the time of the events. Right. Right. You have it running in 95 on the 95 and in 97 on the 97, but there's a definite problem here, and I think Mr. Yegman understands he has that problem. There's a two-and-a-half-year delay as to the 97 case, a four-and-a-half-year delay as to the 95 case. So he's got this gigantic gap. It's a one-year statute of limitations. On 1983, what does he do? The most he has really come up with is making some kind of very general argument about equitable estoppel. I would like to indicate to this Court that I sent to the Court a Rule 28J letter and attached a copy of the DNM-Hunter opinion. That has been identified as a related case to the Guerrero case and the Diaz case, the argument case back in, I guess it was May. And Mr. Yegman basically kind of made the same argument that he's attempting to make here on equitable estoppel, that the plaintiff didn't sort of know the total picture of the so-called Rampart scandal until it hit the newspapers, and somehow that prevented him from being able to timely bring his lawsuit. That oral argument in DNM-Hunter, he was asked very poignantly to identify the factual basis of that estoppel argument. What facts did the plaintiff not know about his cause of action at the time? And he could not come up with anything. He had to admit, yes, the plaintiff knew at the time, at least in his mind, that he was wrongfully arrested, that the drugs were planted on him. He knew all the elements of his 1983 offenses. And so Mr. Yegman was then asked, well, so then equitable estoppel really does not apply here, right? And my recollection was he conceded that point. I've listened to the tape of the argument, and he did concede that point. His equitable estoppel argument here was exactly the same as it was in the DNM-Hunter case. In DNM-Hunter, the court said we have not, both them assuming common law, equitable tolling would be available. No facts constituting the elements of Hunter's cause of action were concealed from him. Totally rejected equitable estoppel. It has to be rejected in this case as well. He's not pled it. He cannot plead it. So in terms of the statute of limitations, he doesn't have that tolling available to him. He has no explanation for it. So that leaves him, that leaves him RICO. That leaves him RICO. If I could, since I'm also on the Diaz case, I would like to wait until Mr. Yegman addresses me. I'm striking out with this RICO business here. Nobody wants to talk first. He's the appellant. He brought up the theory. I'd like to see him defend it first, if I could, since I am the respondent. Well, and that's the only issue in that case, as I recall. And Diaz, it is, yes. So, I mean, in conclusion, under either version, if you go, heck, he's got a problem, if you go statute of limitations, he's got a serious problem. And he hasn't overcome that problem. These are old lawsuits that he's trying to bring up way too late, and that's all that we're really talking about. Of course, any questions on the 1983? I'll reserve my time for the RICO. All right. Thank you. I'm trying to think of the right verb to use. Maybe I'll use unhappy. I was unhappy to hear counsel argue here against me in the Hunter case. I was also unhappy when I saw this Rule 28J, because what basically has happened, it seems, is that counsel has cited to this court an unpublished disposition. I think that's inappropriate, and I think the court ought to reject what it just heard concerning the Hunter case and also reject the 28J. I never would have done that, because I think the rules prohibit it. I'll quickly make the other points I have to make. Cunningham is distinguishable from this case for the reason that Cunningham was then and remains in prison, and letting him have Section 1983 would undermine potentially his sentence. Borrero is not in prison, and, therefore, there is no sentence to be undermined at all were this court to decide that heck doesn't apply. Second, with respect to the 1983. Stopping there. That was my earlier concern. In other words, if you serve your sentence, then even though later you bring a civil action concerning the same acts that resulted in your sentence, there's no conflict here in the underlying legal underpinnings or philosophy, because even though you're going to get paid, it has nothing to do with it because you've served your sentence? That's my point. There's nothing to conflict with. There's no predicate anymore. There's got to be a predicate. There's got to be something on the other side. The predicate is? It doesn't matter in the world for there to be a conflict. In other words, you served your time, you paid your dues, and now we're going to pay you for it. No, no. That's a terrible way to characterize it. That's what happens, though. Well, we're not going to pay you for serving your time. We're going to pay you for the bad conduct of the police, which is separate and apart from what you did. You did something wrong. You got convicted. You pled guilty. You served your time. That shouldn't excuse something bad that the police did. Can I have an extra 30 seconds? Unless it implies the invalidity of the conviction. Of course. Well, that's what we're talking about. I'm staying on that premise. I think it's got to imply the invalidity of the conviction and impair the sentence. I think it's conjunctive. Can I have an extra 30 seconds, please? Sure. Next, Heck doesn't apply to the excessive force claim in this case, because under Smith v. Towery, as is recognized in Ovi v. Quinn, that just doesn't apply to that at all. With respect to the statute of limitations, plaintiffs should have an opportunity to address that in the district court. He didn't. He wasn't permitted to address equitable tolling or equitable estoppel at all, because this case went down on a pleading issue. Last point that was made by defense counsel was to try to analogize Heck to collateral estoppel. My recollection is that Justice Scalia, in his 1994 hex opinion, was careful to say this isn't collateral estoppel and stayed away from collateral estoppel for reasons I think all of us understand very well. I have nothing else to add. Shall I just stand here? Might as well save the exercise of going back. The case just argued to be submitted.
judges: Brunetti, Tg Nelson, Silverman